815 F.2d 1401
 Willie Morris SMITH, Petitioner-Appellant,
v.
J.D. WHITE, Warden, Charles A. Graddick, individually and
Donald Siegelman, Attorney General of the State of
Alabama, in his official capacity,
Respondents-Appellees.
 No. 86-7468
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 May 1, 1987.
 
 Tyrone C. Means, Montgomery, Ala., for petitioner-appellant.
 P. David Bjurberg, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before FAY, ANDERSON and EDMONDSON, Circuit Judges.
 EDMONDSON, Circuit Judge:
 
 
 1
 Willie Morris Smith, an Alabama prisoner serving a life sentence on a robbery conviction and a concurrent twenty year sentence on a conviction for assault with intent to murder, petitioned for a federal writ of habeas corpus. The district court denied the petition, and Smith appealed. We affirm.
 
 I. Sufficiency of Evidence
 
 2
 The first argument Smith raises on appeal is that the evidence was insufficient to support his convictions. The relevant question with respect to such a habeas challenge is whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This analysis requires an assessment of the essential elements under Alabama law of the crimes of robbery and assault with intent to murder. See Martin v. Alabama, 730 F.2d 721 (11th Cir.1984).
 
 
 3
 Under Alabama law in effect in 1975 when Smith committed the crimes, assault with intent to murder required assault, intent to kill a human being, and malice aforethought. See Hall v. State, 348 So.2d 870 (Ala.Crim.App.), cert. denied, 348 So.2d 875 (Ala.1977), cert. also denied, 434 U.S. 1021, 98 S.Ct. 745, 54 L.Ed.2d 768 (1978); Toliver v. State, 50 Ala.App. 654, 282 So.2d 92 (Ala.Crim.App.1973). The offense of robbery had three essential elements: (1) felonious intent, (2) force, or putting in fear as a means of effecting the intent; and (3) by that means taking and carrying away the property of another from his person or in his presence. See Vickerstaff v. State, 374 So.2d 443 (Ala.Crim.App.1979); Fincher v. State, 55 Ala.App. 676, 318 So.2d 371 (Ala.Crim.App.1975).
 
 
 4
 Smith's convictions resulted from two separate jury trials: Smith was tried first for assault with intent to murder, and then for robbery. In both trials, the government presented, inter alia, the following evidence: Clifford St. John, an eighty-year-old white male, was shot from behind while working in his yard on the morning of November 21, 1985. St. John passed out and subsequently regained consciousness long enough to call for help. At the time St. John was shot, he was carrying a wallet with forty-one dollars in it. The wallet was missing by the time he got to the hospital.
 
 
 5
 On the same day as the shooting, the police searched with a metal detector and discovered a spent .22 caliber shell approximately 75 feet from where St. John was shot. The next day, St. John's son discovered St. John's billfold on a railroad track west of St. John's house, and a .22 caliber rifle nearby. Without moving this evidence, St. John's son called the police, and then showed it to them when they arrived. The forty-one dollars was missing from the wallet. A firearms expert testified that the markings on the spent shell were consistent with the markings that would be produced by the rifle that was found.
 
 
 6
 John Goldberg testified that his home at 456 Shannon Hill Road had been burglarized on November 18, 1975, and that among the items which were missing was a .22 caliber rifle. Goldberg identified the rifle which had been found near the railroad track as his own.
 
 
 7
 Petitioner Smith was arrested on December 8, 1985 for an unrelated burglary. At the police station, Smith was shown a photograph of the .22 caliber rifle. Smith confessed that he had acquired this rifle when he and his friend, John Cotton, burglarized a home at 456 Shannon Hill Road (Goldberg's address).
 
 
 8
 John Cotton testified at each trial that he had seen petitioner with a rifle. Cotton also testified, however, that he was not sure if the rifle found on the railroad track was the same as the one he had seen in Smith's possession.
 
 
 9
 Stella Ford, John Cotton's live-in lover, testified that in November, petitioner was sitting with Stella, Cotton, and a third person. According to Stella, petitioner had a rifle across his lap and stated that he was going to take the gun and "go shoot a white mother fucker" with it. Stella further testified that petitioner came back on a subsequent morning and said that he had "shot a white mother fucker."
 
 
 10
 Although the evidence against Smith was circumstantial, a rational jury could have found that the evidence in Smith's first and second trials established beyond a reasonable doubt the essential elements of assault with intent to murder and robbery, respectively. Therefore, the evidence supporting Smith's convictions was sufficient.
 
 II. Effectiveness of Assistance of Counsel
 
 11
 The second argument raised by Smith is that he was denied effective assistance of counsel at his two trials. Smith alleges that Tom Payne, his appointed counsel, a) labored under a conflict of interest, b) filed neither discovery motions nor other pretrial motions, c) failed to interview potential witnesses whose names Smith supplied, d) failed to seek pretrial suppression hearings, e) discussed with Smith neither defense strategy nor tactics, in general, nor the decision that Smith should not take the stand, in particular, f) wasted a preemptory strike by using it to remove a juror who could have been removed for cause, g) failed to question jurors during voir dire regarding racial prejudice in a case with racial overtones, h) failed to call Smith to testify at suppression hearings during the trials, and i) did not file a motion of autrefois convict after the assault with intent to murder conviction.
 
 
 12
 We consider first Smith's allegation of conflict of interest. According to Smith, his trial attorney, Tom Payne, labored under a conflict of interest because Payne had previously represented a government witness, Cotton. This conflict had devastating results, Smith alleges, because Cotton was the most likely other suspect for the robbery and attempted murder of St. John.
 
 
 13
 To establish a sixth amendment violation, Smith must demonstrate both that an actual conflict of interest existed and that such conflict adversely affected the adequacy of his representation. Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); Porter v. Wainwright, 805 F.2d 930, 939-40 (11th Cir.1986); Stevenson v. Newsome, 774 F.2d 1558, 1562 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1476, 89 L.Ed.2d 731 (1986).
 
 
 14
 Thus, the threshold issue is whether Smith demonstrated an actual conflict of interest. A mere possibility of conflict of interest does not rise to the level of a sixth amendment violation. See Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719, Stevenson, 774 F.2d at 1561.
 
 
 15
 This circuit has adopted a test to distinguish actual from potential conflict:
 
 
 16
 We will not find an actual conflict [of interest] unless appellants can point to specific instances in the record to suggest an actual conflict or impairment of their interests.... Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.
 
 
 17
 Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.) (citations omitted), cert. denied, 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984); see also Porter, 805 F.2d at 939; Stevenson, 774 F.2d at 1561.
 
 
 18
 The federal magistrate in this habeas proceeding conducted an evidentiary hearing. At this hearing, Smith, who was represented by legal counsel, presented testimony and documentary evidence regarding his ineffective assistance of counsel claim in general and the conflict of interest issue in particular. Smith demonstrated that his trial lawyer, Payne, had represented Cotton, a prosecution witness, in a prior case in which Cotton was convicted of selling marijuana. In that earlier case, the court gave Cotton a suspended sentence and placed Cotton on probation on April 4, 1975.
 
 
 19
 Smith presented evidence at the hearing which suggests that Payne may have continued to represent Cotton with respect to this marijuana conviction even after St. John was shot on November 21, 1975. A certified copy of a "case action summary" for Cotton's marijuana case indicates that on December 19, 1975--after St. John was shot--the court revoked Cotton's probation and put Cotton's previously suspended sentence into effect. Although the case action summary neither explicitly states that a probation revocation hearing was held, nor explicitly states that Payne represented Cotton at such hearing, Payne may have represented Cotton with respect to his probation revocation on December 19, 1975.
 
 
 20
 Smith, however, introduced no evidence indicating that Payne ever simultaneously represented both Smith and Cotton. Payne was appointed to represent Smith in the case sub judice on about March 19, 1976, and met with Smith for the first time on that date. Nothing in the record suggests that Payne continued to represent Cotton with respect to the marijuana case in March, 1976 or at any time thereafter. At the habeas hearing, Payne testified that "to the best of [his] knowledge," he had ceased to represent Cotton at the time he began to represent Smith.
 
 
 21
 We therefore treat this case as one of successive representation rather than simultaneous representation.[1] Of course, the absence of simultaneous representation is not determinative. In some circumstances, a defense lawyer's prior representation of a witness can given rise to an actual conflict of interest. See, e.g., United States v. Martinez, 630 F.2d 361, 362 (5th Cir.1980), cert. denied, 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); Porter, 805 F.2d at 939-41. But the absence of simultaneous representation is a significant factor; generally, it is more difficult to prove that successive representation caused an actual conflict of interest than that simultaneous representation did so.
 
 
 22
 This circuit's test for actual conflict--applicable to both successive and simultaneous representation--requires a showing of "inconsistent interests." We hold that in a successive representation case, mere proof that a criminal defendant's counsel previously represented a witness is insufficient to establish "inconsistent interests." In such a context, if defendant fails to show that either (1) counsel's earlier representation of the witness was substantially and particularly related to counsel's later representation of defendant, or (2) counsel actually learned particular confidential information during the prior representation of the witness that was relevant to defendant's later case, then defendant has not come even close to showing "inconsistent interests."[2] We do not imply that proof of either substantial relationship or receipt of relevant confidential information or both would be enough to demonstrate "inconsistent interests" in a successive representation case. We merely hold that Smith has failed to show "inconsistent interests" in this case where he has failed to adduce proof of substantial relationship or relevant confidential information or any other proof of inconsistent interests.
 
 
 23
 Although the federal magistrate conducted an evidentiary hearing, at which Smith presented evidence regarding the alleged conflict of interest, neither the magistrate nor district court made any factual finding regarding conflict of interest. The absence of such findings, however, does not require a remand. We have reviewed the evidence presented at the hearing and conclude that such evidence was inadequate to prove conflict of interest.
 
 
 24
 At the evidentiary hearing, petitioner presented no evidence whatsoever suggesting that Payne's prior representation of Cotton in a marijuana case was substantially related to Payne's later representation of petitioner in petitioner's attempted murder and robbery trials. Petitioner alleged in his appellate brief that "Payne failed to ... impeach ... the ... testimony of Stella Ford or point the finger of suspicion at Cotton, although [Payne] had the means at his disposal to do so." Such a conclusory allegation is, however, inadequate. Smith completely failed to present any evidence at the evidentiary hearing showing that Payne in fact learned any relevant confidential information during his prior representation of Cotton.
 
 
 25
 Smith presented evidence which raised, at very most, a speculative possibility of conflict. The burden is on petitioner in a habeas proceeding to prove that his conviction was unconstitutional. Hill v. Lanahan, 697 F.2d 1032, 1036 (11th Cir.1983); Lokos v. Capp, 528 F.2d 576, 578 n. 3 (5th Cir.1976). This federal court has great respect for State court convictions, and will not lightly set such a conviction aside. In a habeas proceeding, a federal court presumes that a State court conviction is constitutional and lawful, unless and until petitioner proves the contrary by a preponderance of the evidence. Although Smith was provided a federal evidentiary hearing at which he was given an opportunity to prove actual conflict, the evidence he presented fails to do so.
 
 
 26
 In addition to Smith's conflict of interest allegations, Smith alleges a wide variety of ordinary ineffective assistance of counsel claims. "Conflict of interest allegations aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." Strickland, 466 U.S. at 693, 104 S.Ct. at 2067. To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id., 466 U.S. at 694, 104 S.Ct. at 2068.
 
 
 27
 Nothing in the trial transcripts, the habeas evidentiary hearing transcript, or elsewhere in the record demonstrates that the alleged deficiencies in Payne's performance prejudiced Smith. Because Smith has failed to demonstrate prejudice, these ordinary ineffective assistance of counsel claims too must fail.
 
 III. Voluntariness of Statements
 
 28
 Finally, Smith contends that the admission of certain of his statements at both trials was constitutional error. According to Smith, the police coerced him to give these statements by questioning him for hours, holding him incommunicado, forcing him to stand facing a wall, subjecting him to racial epithets, and taking him to an isolated area and telling him to make a run for it. The state court, in both trials, and the district court, in the federal habeas proceeding, concluded that Smith made the statements voluntarily.
 
 
 29
 The voluntariness of a statement is a legal issue which must be independently reviewed in a federal habeas proceeding. A state court's ultimate conclusion as to voluntariness is not entitled to a presumption of correctness under 28 U.S.C. sec. 2254(d), although subsidiary factual findings by a state court are presumed to be correct. Miller v. Fenton, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Similarly, a federal district court's ultimate legal conclusion regarding voluntariness is subject to independent review by an appellate court in a habeas action, although subsidiary factual findings by the district court are conclusive unless clearly erroneous.
 
 
 30
 The state trial court made no factual findings regarding the circumstances in which Smith gave his statement. After an evidentiary hearing, the federal magistrate in this habeas proceeding found that Smith was not coerced by the police, and that Smith was not made any promises. These factual findings, adopted by the district court, were not clearly erroneous. The record discloses, and the parties do not dispute, that Smith was given ample Miranda warnings prior to making his statements. Therefore, we hold that Smith voluntarily made the statements.
 
 
 31
 The judgment of the district court, denying Smith's petition for habeas corpus, is AFFIRMED.
 
 
 
 [1]
 Smith alleges in his appellate brief that Stella Ford, a prosecution witness, conferred with Payne in Payne's capacity as Cotton's attorney. The record indicates that Stella Ford testified at Smith's robbery trial that she had at one time called Payne because she was concerned about Cotton's well-being and knew that Payne was Cotton's lawyer. Ford clarified that her call concerned "the first time"--i.e., the crime for which Cotton had been convicted "before." At the evidentiary hearing in this federal habeas proceeding, Payne testified that he did not remember when he received that phone call from Ford. Nothing in the record indicates that Payne received this phone call after he began to represent Smith. Evidence of a phone call at an unspecified time regarding a prior case is not evidence that Payne simultaneously represented Cotton and Smith
 
 
 [2]
 Cf. Martinez, 630 F.2d at 362-64 (criminal defendant deprived of effective assistance of counsel where his lawyer previously represented government witness, the subject matter of prior representation was related, and counsel learned confidential information during prior representation); Church of Scientology of California v. McLean, 615 F.2d 691, 692 (5th Cir.1980) (a lawyer need not disqualify himself in a civil matter concerning a former client unless the terminated employment had some substantial relationship to the pending suit or unless he received some privileged information); Cossette v. Country Style Donuts, Inc., 647 F.2d 526, 530 (5th Cir. June 1981) (a court need not disqualify a lawyer in a civil matter concerning a former client unless the terminated employment had some substantial relationship to the pending suit or unless he received some privileged information); ABA Model Rule of Professional Conduct 1.9 ("a lawyer ... who has formerly represented a client shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.")