James McCONICO, Jr.,
Petitioner–Appellant,

v.

STATE OF ALABAMA, John E. Nagle,
Respondents–Appellees.

No. 90–7014.

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1990.

David R. Arendall, Arendall & O'Kelley, Birmingham, Ala., for petitioner-appellant.

Beth Jackson Hughes, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before POWELL *, Associate Justice, TJOFLAT, Chief Judge, and KRAVITCH, Circuit Judge.

KRAVITCH, Circuit Judge:

A defendant's lawyer, laboring under a conflict of interest, may deprive a defendant of the sixth amendment right to counsel during a criminal trial. The United States Supreme Court has stated that counsel is constitutionally ineffective if: 1) counsel faced an actual conflict of interest, and 2) that conflict "adversely affected" counsel's representation of the defendant. *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348, 100 S.Ct. 1708, 1719, 1718, 64 L.Ed.2d 333 (1980)); *LoConte v. Dugger*, 847 F.2d 745, 754 (11th Cir.), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). James McConico Jr. appeals the denial of his petition for habeas corpus based on ineffective assistance of counsel due to a conflict of interest. After an evidentiary hearing, a federal magistrate found no actual conflict of interest and no adverse effect. The district court adopted the magistrate's findings and denied relief. We disagree with both findings. Therefore we reverse and remand for a new trial.

## BACKGROUND

McConico was convicted of murder based on the shooting of Ricky Morton. The incident occurred May 23, 1983, and McConico was arrested May 26, 1983. McConico retained Fred Pickard as trial counsel for an agreed fee of $5,000, and Pickard represented him at the preliminary hearing June 20, 1983. In September or October 1983, Brenda McConico, appellant's wife, also hired Pickard to represent her to recover proceeds from the life insurance policy of Morton. Ricky Morton was Brenda McConico's brother, and it was unclear whether the policy proceeds were pay-

* Honorable Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court, Retired, sitting by designation.

able to Brenda or to her other brother Rodney Morton. Brenda McConico and Rodney Morton agreed to split the proceeds, and on October 10, 1983 Maccabees Mutual Life Insurance Company agreed to pay them and their lawyers $20,000. Pickard received his check in November 1983.

At McConico's jury trial on January 4–5, 1984, his primary argument was self-defense. Pickard was his lawyer, and McConico testified on his own behalf. Brenda McConico, although she had testified for the defense in the preliminary hearing, testified for the prosecution at trial and was cross-examined by Pickard. On January 5, 1984, appellant was convicted of murder in Jefferson County Circuit Court of Alabama and was sentenced to life imprisonment under the Alabama Habitual Felony Offender Act. Pickard withdrew from the case January 24, 1984.

On March 19, 1984, Brenda McConico and Rodney Morton signed a document releasing Maccabees from any liability arising out of the insurance claim and acknowledging the $20,000 payment on the insurance policy.

McConico's conviction was affirmed on direct appeal. *McConico v. State,* 458 So.2d 743 (Ala.Crim.App.1984). He then filed coram nobis petitions in the state court claiming ineffective assistance of counsel at trial based on conflict of interest and a petition for relief from conviction or sentence based on Temporary Rule 20 of the Ala.Rules of Crim.Pro. Both were denied, and the appeals were dismissed. On March 23, 1988, McConico filed a federal habeas petition based on ineffective assistance due to conflict of interest.[1] After an evidentiary hearing, the magistrate issued a report and recommendation, and the federal judge entered the order denying relief.

To establish a violation of the sixth amendment a petitioner must show both counsel's actual conflict of interest and an adverse effect on counsel's representation. The district court's findings of fact will be reversed only if they are clearly erroneous. *LoConte,* 847 F.2d at 750. The district court's conclusion about constitutional ineffectiveness of counsel is a mixed question of law and fact, however, and will be reviewed independently on appeal. *Id.; Lightbourne v. Dugger,* 829 F.2d 1012, 1023 (11th Cir.1987), *cert. denied,* 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988); *Oliver v. Wainwright,* 782 F.2d 1521, 1524 (11th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986).

## ACTUAL CONFLICT

■ Appellant argues that the actual conflict was Pickard's simultaneous representation of him in his criminal trial and of Brenda McConico in her insurance claim. Appellant contends that Pickard necessarily faced divided loyalties when he cross-examined his client Brenda McConico at appellant's trial, especially as the matters were so closely related. The insurance policy contained an exclusion clause that denied payment if the policy holder died from "Participation in, or as a result of having participated in the committing of an assault or felony." At the criminal trial, Pickard argued that McConico shot in self-defense and that Morton was the aggressor in the May 23 incident that resulted in his death. In order to preserve the insurance proceeds payable upon Morton's death to Pickard's client Brenda McConico and to avoid the exclusion clause of the policy, however, Pickard was required to take the position in the insurance claim that Morton was not the aggressor in the incident. This position negated McConico's claim of self-defense. Appellant argues that this structural conflict tempered Pickard's representation during the criminal proceedings and that Pickard never raised the possibility either with him or the state court.

---

1. McConico brought a previous habeas petition of ineffective assistance in 1985 based on failure to prepare the case adequately. The state argued to the district court that the second ineffective assistance petition was therefore an abuse of the writ. However, the district court found that petitioner did not know of the legal basis for a conflict of interest claim until 1986. Magistrate's report at 15. It thus found that failure to raise the conflict of interest claim earlier was "excusable neglect" and that bringing a second federal habeas petition was not an abuse of the writ. *Id.* The state did not appeal this finding; therefore we do not address it.

The state argues that Pickard did not represent appellant and Brenda at the same time. Full payment of the insurance claim occurred in fall 1983, well before the beginning of McConico's criminal trial in January 1984. Thus, according to the state, Pickard could not have been torn by divided loyalties because the insurance company never attempted to recoup payments under the exclusion clause of the policy. The state further argues that Pickard's full defense of appellant, including his cross-examination of Brenda, showed no indication that he was subject to conflicting interests.

 In assessing whether a conflict exists, this court must be convinced that the conflict is actual, not merely hypothetical or speculative. *Lightbourne,* 829 F.2d at 1023; *Smith v. White,* 815 F.2d 1401, 1404–05 (11th Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987); *Oliver v. Wainwright,* 782 F.2d at 1525; *Stevenson v. Newsome,* 774 F.2d 1558, 1561–62 (11th Cir.1985), *cert. denied,* 475 U.S. 1089, 106 S.Ct. 1476, 89 L.Ed.2d 731 (1986). Appellant must show "inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Smith v. White,* 815 F.2d at 1404 (11th Cir.1987) (quoting *Barham v. United States,* 724 F.2d 1529, 1532 (11th Cir.) (citations omitted), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984)). *Cf., Sullivan v. Cuyler,* 723 F.2d 1077, 1086 (3d Cir.1983) ("Actual conflict of interest is evidenced if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action.").[2] A conflict may arise from a lawyer's simultaneous or successive representation of adverse interests. Whether the representation is simultaneous or successive does not conclusively determine the question of actual conflict, although it is generally easier to prove actual conflict arising from simultaneous representation than from successive representation. *Smith v. White,* 815 F.2d at 1405.

In this case, the record shows that Pickard simultaneously represented conflicting interests. McConico retained Pickard for his criminal defense in May 1983. Pickard represented him at his initial appearance June 3, 1983 and handled his plea of not guilty at the preliminary hearing June 20, 1983. Pickard represented him at the criminal trial January 4–5, 1984 and filed the notice of appeal and a motion for new trial before withdrawing from the case January 24, 1984. Pickard also represented Brenda McConico in the insurance matter during much of that same period. Although the record is unclear about when Brenda retained Pickard to recover the insurance proceeds, it cannot be later than October 10, 1983, when the insurance company agreed to pay Brenda and Rodney Morton. The two beneficiaries and their lawyers[3] may have been paid shortly thereafter, but Pickard's representation of Brenda could not have ended until the rights of the parties had been finalized in the form of the release dated March 19, 1984. Regardless of the payment schedules involved, there were at least three months of overlapping representation during which Pickard represented both Brenda and appellant, and those were the critical months of appel-

**2.** Although conflicts typically arise when counsel represents criminal codefendants, a conflict may be equally present when counsel represents a criminal codefendant and a party to a civil suit. *See Rosenwald v. United States,* 898 F.2d 585, 587–88 (7th Cir.1990) (quoting *Castillo v. Estelle,* 504 F.2d 1243, 1245 (5th Cir.1974)).

**3.** Aside from his representation of Brenda McConico, Pickard may have faced another source of conflict of interest. The lawyer for Rodney Morton was Richard Hughes. Although Pickard stated at an evidentiary hearing that he and Hughes were not partners, they shared offices, used "Pickard & Hughes" stationery, and at least once shared a fee for legal services. Just as the duty to preserve Brenda's insurance payment worked against a vigorous defense of appellant, Pickard's relations with Hughes could similarly have jeopardized the defense because it was in the interest of Rodney Morton as much as Brenda McConico to assure that Morton was not the aggressor in the shooting in order to avoid the exclusion clause of the policy and to retain the insurance payment.

lant's criminal trial. We conclude, therefore, that the district court's finding that Pickard's representation was successive rather than simultaneous is clearly erroneous.

At appellant's criminal trial, Pickard was forced to cross-examine Brenda McConico, his own client, who was testifying for the state against her husband. This is a situation of inherently divided loyalty because the success of one client depends on discrediting another. *See Lightbourne,* 829 F.2d at 1023 ("An attorney who cross-examines a former client inherently encounters divided loyalties.") (citing *Porter v. Wainwright,* 805 F.2d 930, 939 (11th Cir. 1986), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987); *Stephens v. United States,* 595 F.2d 1066, 1070 (5th Cir.1979)).[4] As we stated in a case involving similar facts:

> In these circumstances, counsel is placed in the equivocal position of having to cross-examine his own client as an adverse witness. His zeal in defense of his client the accused is thus counterpoised against solicitude for his client the witness. The risk of such ambivalence is something that no attorney should accept and that no court should countenance, much less create.

*Castillo v. Estelle,* 504 F.2d 1243, 1245 (5th Cir.1974); *cf., Barham v. United States,* 724 F.2d at 1535 (Wisdom, J., concurring) (quoting *Zuck v. Alabama,* 588 F.2d 436, 439 (5th Cir.1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42); *Edgemon v. Lockhart,* 768 F.2d 252, 255–56 (8th Cir. 1985).

Moreover, even if Brenda McConico had not testified against her husband, the existence of the exclusion clause in the insurance policy placed Pickard between two clients in adverse positions. A vigorous defense of appellant based on self-defense that resulted in acquittal would necessarily have made Ricky Morton the aggressor in the shooting incident. That would have called into question Brenda McConico's and Rodney Morton's entitlements to benefits payable on the policy. Although the insurance company never attempted to deny payment based on the exclusion, Pickard's duty as an advocate required him to anticipate such a position and to be prepared to argue that the exclusion did not apply in order to secure Brenda's portion. Evidence in the record, which the state does not contest, indicates that had the appellant been acquitted, the insurance company could have recouped the payments under Alabama law based on the exclusion clause. That necessarily conflicted with Pickard's duty at appellant's trial to prove that Ricky Morton was the aggressor and forced Pickard to choose evidence less convincing for appellant's case of self-defense than was available. Pickard conceded at the evidentiary hearing that he was probably aware of the insurance policy's exclusion clause when he represented appellant in the criminal trial. Despite Pickard's assertion that dual representation did not actually hamper his defense of appellant, nonetheless he was in a situation of inherent conflict. Had Pickard had any doubt about the possibility of conflict, he could have raised it with his client or the trial court, but he did not.[5]

■ By placing himself between two adverse parties and actively representing both, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland,* 104 S.Ct. at 2067. Unlike situations of successive representation where conflict is usually more attenuated, *e.g., Lightbourne,* 829 F.2d 1012 (11th Cir.1987), *Smith,* 815 F.2d 1401 (11th Cir.

---

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**5.** Pickard was not completely insensitive to the possibility of conflict of interest. In fact, when Rodney Morton asked Pickard to represent him in the insurance matter, Pickard declined because he felt it would conflict with his representation of Brenda McConico in the insurance matter, as they were both potential beneficiaries.

**1548**

1987), *Porter,* 805 F.2d 930 (11th Cir.1986), here counsel represented adverse clients simultaneously. In some rare situations, a lawyer may simultaneously represent more than one party and even cross-examine a current client without creating an actual conflict. *See, e.g., Barham v. United States,* 724 F.2d 1529 (11th Cir.1984). In *Barham,* an attorney simultaneously represented a criminal defendant and a prosecution witness in a civil matter; however, the matters were unrelated and the witness was not critical to the prosecution's case. *Barham,* 724 F.2d at 1530–31. Here the matters were related, and the witness's testimony was critical. The inherently antagonistic task of cross-examining a client was made more serious by the presence of the insurance clause, which placed Pickard's two clients in adversary positions. This forced Pickard to take or to anticipate taking conflicting positions about the events central to appellant's criminal trial. The conflict was actual, obvious and serious enough that the attorney should have at least discussed the issue with his clients and the court.[6]

■ Objection to a conflict of interest may be waived by the client, but the waiver must be through "clear, unequivocal, and unambiguous language." *United States v. Petz,* 764 F.2d 1390, 1392 (11th Cir.1985) (quoting *United States v. Garcia,* 517 F.2d 272, 278 (5th Cir.1975) (citations omitted)); *United States v. Mers,* 701 F.2d 1321, 1325 (11th Cir.1983). In this case, appellant was not aware of the legal basis for the conflict of interest until 1986, two years after his criminal trial. *See supra* n. 1. Even had appellant known of the conflict before trial, nothing in the record establishes that appellant unequivocally waived his objections to Pickard's dual representation.

We hold, therefore, that McConico has shown an actual conflict of interest that has not been waived.

## ADVERSE EFFECT

■ We next determine whether Pickard's conflict of interest had an "adverse effect" on his representation of appellant. The United States Supreme Court has cautioned that "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067; *Holloway v. Arkansas,* 435 U.S. 475, 490–91, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978). For this reason, the law formerly was that once a conflict of interest was shown, prejudice was presumed. *See Danner v. United States,* 820 F.2d 1166, 1169 (11th Cir.1987); *Barham v. United States,* 724 F.2d 1529, 1531 (11th Cir.1984); *Baty v. Balkcom,* 661 F.2d 391, 397 (5th Cir.1981) (Unit B), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982). Since *Strickland,* however, it has been clear that a showing of adverse effect is required. *LoConte,* 847 F.2d at 754; *Lightbourne,* 829 F.2d at 1024; *Smith,* 815 F.2d at 1404; *Stevenson,* 774 F.2d at 1562–63. A petitioner need not show that the result of the trial would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. *LoConte,* 847 F.2d at 754 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

Appellant points to several instances where Pickard failed to pursue vigorously appellant's claim of self-defense at trial. Pickard declined to call Rose Furnace, a neighbor who might have corroborated appellant's version of events and contradicted the state's key witness, to testify. Pickard also declined to call appellant's son, James McConico III, who was four years old at the time of trial, because he though the child was not competent to testify and could not relate details of the shooting. Appellant's mother stated at the evidentiary hearing, however, that James III had said before the trial that he saw the shooting and that Morton had threatened appellant with a knife. At the evidentiary hear-

---

**6.** Although an attorney may be subject to disciplinary sanctions under the Alabama ethics code, a violation of the ethics code is a separate inquiry from that of constitutional ineffective-

ness due to a conflict of interest. At least one 11th Circuit opinion has compared the two. *See Lightbourne,* 829 F.2d at 1023 n. 12.

ing, James III, then nine years old, so testified. Because James III was a potential eyewitness to the shooting and may have seen a knife, which would have been critical to a case of self-defense, there would have been no harm in attempting to have James III declared competent, as Pickard acknowledged.[7]

Furthermore, when Brenda testified for the prosecution against appellant, Pickard did not sufficiently challenge her statements on the critical issue of the victim's possession of a knife. At the beginning of Pickard's cross-examination, Brenda first asserted that only appellant had told her a knife was involved in the shooting, not another witness named Sharon Mitchell.[8] After Pickard questioned her further, Brenda admitted that Sharon Mitchell had told her a knife was involved. Pickard, however, did not vigorously impeach her, press her to explain or clarify her statement, or use the transcript of the preliminary hearing at which Mitchell stated that Morton possessed a knife during the incident. More extensive cross-examination

might well have been fruitful, as Brenda signed an affidavit after the trial in which she fully recanted her trial testimony as vindictive and false. In the affidavit, she stated that Sharon Mitchell had told her on the day of the shooting that the victim, Ricky Morton, was carrying a knife immediately after the shooting, which would have supported appellant's claim of self-defense.

Pickard also did not attempt to have Brenda's testimony concerning appellant's statements excluded on the basis of the privilege of marital communications, which may be raised by the defendant.[9] Taken together, these oversights were harmful to appellant's defense.[10] Although they may not have changed the outcome of the trial, that is not what the constitutional standard requires. Appellant need only show that the conflict of interest of counsel adversely affected counsel's representation, and based on the foregoing evidence from the record, we conclude that Pickard was in a situation that had an adverse effect on appellant's defense.

7. Alabama law, at the time of trial and now, states that there is no determinate age at which a child may be deemed incompetent. *Cole v. State,* 443 So.2d 1386 (Ala.Crim.App.1983); Ala. Code § 12-21-165(b) (1975 & 1990 Supp.) ("The court must, by examination, decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness or infancy."); *Rodgers v. State,* 42 Ala.App. 660, 177 So.2d 460 (Ala.App.1965). Alabama courts have been permissive in allowing children to testify. *See Rogers v. State,* 555 So.2d 1168 (Ala.Crim. App.1989) (5-year-old); *Mickens v. State,* 428 So.2d 202 (Ala.Crim.App.1983).

8. She asserted this several times, most clearly at page 99 of the trial transcript: "James told me that there was a knife and to tell Sharon that the knife was there, did she see the knife?" This statement could have led the jury to believe that only appellant was asserting that Morton had a knife in an effort to claim self-defense and that he was trying to manipulate witnesses. Later at the evidentiary hearing, Pickard admitted that this statement was damaging and that he could have aided his client by attempting to exclude it from evidence.

9. Pickard claims he thought only the testifying spouse has the option of invoking the privilege, but Alabama law indicates otherwise. An Alabama statute allows a spouse to testify over the

other spouse's objection, but he or she may not testify to confidential communications that would normally be subjected to marital privilege, unless the communicating spouse waives it. *See* C. Gamble, *McElroy's Alabama Evidence,* § 103.01(4) at 226 (3d ed. 1977 & 1988 Supp.); *State v. Browder,* 486 So.2d 504, 505–06 (Ala. Crim.App.1986) (quoting *Arnold v. State,* 353 So.2d 524, 526 (Ala.1977)).

10. Appellant claims that the prosecution's use of two prior convictions to impeach him at trial and at sentencing should have been challenged by Pickard and that failure to do so had an adverse effect on his defense. Appellant thought the convictions could have been excluded based on their youthful offender status. But, as the district court found and as appellant conceded at oral argument, the prior convictions were not of a youthful offender nature. Therefore, Pickard's failure to attempt to exclude the prior convictions based on their youthful offender status would have been futile and cannot be considered harmful to appellant's case. *Cf., Stevenson v. Newsome,* 774 F.2d at 1563 (counsel's failure to object did not have an adverse effect because the objection would have been overruled). The fact that appellant's prior convictions were later set aside has no bearing on this case because at the time of his murder trial they were still valid.

Therefore, we reverse and remand to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.