959 F.2d 237
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darnell WARREN (90-5566); Clifford Gaither (90-6202),
Defendants-Appellants.
 Nos. 90-5566, 90-6202.
 United States Court of Appeals, Sixth Circuit.
 March 30, 1992.
 
 Before ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Darnell Warren and Clifford Gaither challenge a jury verdict finding each of them guilty of drug trafficking crimes. On appeal, both contend that the district court deprived them of their Sixth Amendment right to confrontation when it prohibited defense counsel from inquiring where a government witness lived and worked. They also complain about findings of the district court that led to an enhancement of their sentences pursuant to the Sentencing Guidelines. Finally, Gaither asserts that he was denied effective assistance of counsel because his attorney failed to convey to him the substance of plea bargains offered by the government in advance of trial. For the reasons outlined below we affirm Warren's conviction but remand for further fact-finding with regard to his sentence. Because we find that Gaither's representation was compromised by his attorney's conflict of interest, we vacate his conviction and remand the cause for a new trial.
 
 I.
 
 2
 On February 10, 1988, Warren, Gaither, and Alfonso Atkins were named in a four-count indictment that charged the three men with crimes related to cocaine distribution. Specifically, the indictment alleged that they had violated 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), 21 U.S.C. § 846 (conspiracy to violate drug abuse prevention and control laws), 18 U.S.C. § 2 (aiding and abetting), and 18 U.S.C. § 1952(a)(3) (interstate travel to carry on unlawful activity). These charges stemmed from allegations that Atkins had transported cocaine from Los Angeles to the Cincinnati airport with the knowledge and assistance of his co-defendants.
 
 
 3
 Just before trial, Atkins entered into a plea agreement with the government in exchange for his testimony. At trial, Atkins stated that he had been called in Los Angeles by Warren, who is his brother-in-law. According to Atkins, he spoke to both Warren and Gaither during this initial telephone conversation and was asked to purchase a kilogram of cocaine for resale in the Cincinnati area. After purchasing the requested cocaine, he carried it, strapped to his person, on a flight bound for Cincinnati on January 28, 1988. At the airport he was met by Warren and Pam Patton, who lived with Gaither but was unknown to Atkins at the time. As they were leaving, Atkins was briefly questioned by a drug enforcement agent but was not detained. Thereafter, the three proceeded to Gaither's residence where Atkins gave the cocaine to Gaither in exchange for approximately $17,000.
 
 
 4
 Shortly after this transaction, Atkins returned to Los Angeles where he purchased another kilogram at the request of Gaither. On January 31, 1988, Atkins once again arrived at the Cincinnati airport where he was met by Warren and Patton. This time, however, he was intercepted and searched by law enforcement agents who found the cocaine in his possession.
 
 
 5
 Unbeknownst to appellants, Pam Patton was acting as a government informant while these drug transactions were unfolding. At trial, she testified that she had been living with Gaither and his wife since October 1987. It was Patton who alerted federal agents that Atkins would be transporting cocaine to Cincinnati from Los Angeles.
 
 
 6
 During direct examination, Patton was asked where she worked. She indicated that she was a computer operator for a credit card company. On cross-examination, defense counsel attempted to determine her business and home addresses. The government objected to this line of questioning on relevancy grounds and because Patton continued to work as an informant. The government contended that disclosure of her whereabouts would compromise her viability. The district court sustained this objection.
 
 
 7
 During the months leading up to the trial, Gaither was represented by attorney Calvin Prem. While retained by Gaither, Prem was also counsel for Tommy Ayers, a boxer who was the target of an unrelated state court prosecution. The government attorney handling the Gaither prosecution testified that he approached Prem about having Gaither cooperate against Ayers. He recalled telling Prem, in making this overture, that the latter might have a "problem" because he represented both men.
 
 
 8
 For his part, Prem recalled that he prevented the government attorney from mentioning specific targets for cooperation precisely to avoid a conflict of interest. Instead, he asked Gaither in general terms if he would be willing to cooperate. According to Prem, he never mentioned Tommy Ayers to Gaither by name and acknowledged that he would have taken a "back seat" had his client decided to cooperate. Gaither's own recollection of events essentially squares with Prem's testimony.
 
 II.
 
 9
 Where there is a claim of ineffective assistance of counsel, the basic inquiry involves the resolution of two questions: (1) Did the attorney's representation fall below an objective standard of reasonableness that was outside the range of competence demanded of counsel in criminal cases?; (2) Was the defendant prejudiced by this deficient performance? Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To prevail, therefore, Gaither must demonstrate not only that Prem's representation was deficient but also that it adversely affected the outcome of the proceedings. Id.
 
 
 10
 Where the claim of ineffective assistance of counsel is predicated upon a conflict of interest, the Strickland standard is adapted to those special circumstances. In Thomas v. Foltz, 818 F.2d 476 (6th Cir.), cert. denied, 484 U.S. 870 (1987), this court set out the proper analysis for such a situation. A defendant who entered a guilty plea must establish (1) that there was an actual conflict of interest, and (2) that the conflict adversely affected the voluntary nature of the guilty plea. 818 F.2d at 480. The petitioner in Thomas accepted the plea bargain and entered a plea of guilty, whereas Gaither rejected the offer of a bargained plea in exchange for his cooperation. However, the rule for both cases is similar, in that rejection of a plea bargain must also be "voluntary" in the sense that the defendant must understand the terms of the proffered agreement and the consequences that attend its rejection. Defense counsel is under a duty to explain these matters to a client; failure to do so constitutes ineffective assistance of counsel. Johnson v. Duckworth, 793 F.2d 898, 902 (7th Cir.), cert. denied, 479 U.S. 937 (1986). Furthermore, the client must be involved in the ultimate decision concerning whether a plea agreement is accepted or turned down. Id.
 
 
 11
 From the record before us, it is apparent that Prem was faced with an actual conflict of interest during his representation of Gaither. Cf. McConico v. Alabama, 919 F.2d 1543, 1547 (11th Cir.1990) ("This is a situation of inherently divided loyalty because the success of one client depends on discrediting another."). The government's attorney testified that he attempted to explore a plea agreement that would involve appellant's cooperation against Ayers, who was Prem's client. This overture was not conveyed to appellant. Under the circumstances, we must conclude that Prem's representation of Gaither was deficient under the first prong of the Strickland and Thomas tests.
 
 
 12
 The second prong of the Thomas test is an application of Strickland's prejudice requirement. The Supreme Court has noted that "prejudice is presumed when counsel is burdened by an actual conflict of interest." Strickland, 466 U.S. at 692 (citing Cuyler v. Sullivan, 446 U.S. 335 (1980)). However, the Court declined to apply a per se rule of prejudice to a conflict of interest situation, saying that prejudice is presumed only if a defendant demonstrates that his attorney actively represented a client with a conflicting interest and that this representation adversely affected the attorney's performance. Id.
 
 
 13
 Although his testimony was somewhat self-serving, Gaither said that Prem told him that "[t]he experience that I've had with cooperation is, all they do is use you up and throw you to the wolves.... [I]f you want to cooperate, I'm going to walk in there and I'm leaving, because I don't want to have nothing to do with it." Prem essentially corroborated this testimony in less colorful language. Under all the circumstances, we are left with an abiding sense that Prem's failure to keep Gaither fully informed of plea negotiations, coupled with the overwhelming power of suggestion he exerted to dissuade Gaither from cooperating with the government, probably stemmed from his association with Ayers. For purposes of this analysis, therefore, it is inescapable that the conflict of interest adversely affected his representation of Gaither.
 
 
 14
 For these reasons, we are unable to say that Prem's representation of Gaither rose to the level required by the Sixth Amendment.
 
 III.
 
 15
 Both Warren and Gaither contend that the district court's refusal to permit them to inquire as to informant Patton's home and business addresses deprived them of their Sixth Amendment right of confrontation. Because we must vacate Gaither's conviction due to ineffective assistance of counsel, we discuss this issue only as it applies to Warren.
 
 
 16
 This court recently examined the extent to which a district court can limit cross-examination of a government witness: "[T]he Sixth Amendment has not been construed to give criminal defendants absolute control over cross-examination. Rather, courts have striven to distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." Dorsey v. Parke, 872 F.2d 163, 166 (6th Cir.), cert. denied sub nom. Dorsey v. Sowders, 493 U.S. 831 (1989) (citations omitted). While it would be an abuse of discretion for the trial court to bar completely exploration of a relevant subject during cross-examination, there is a much wider latitude when only the extent of cross-examination is in dispute. Alford v. United States, 282 U.S. 687, 694 (1931).
 
 
 17
 Because the government inquired about Patton's employment during direct examination, further inquiry into the topic on cross-examination was proper and a review of the record reveals that the district court did permit defense counsel to probe Patton's educational and employment history. In light of the fact that defense counsel was permitted to ask Patton about the nature of her work and the source of her qualifications, and in view of the sensitive nature of the witness' status as an informant, we do not believe that the district court compromised Warren's right to confrontation.
 
 IV.
 
 18
 Finally, Warren contends that the district court erroneously enhanced his offense level by three points for being a manager or supervisor of criminal activity.[1] This court accepts findings of fact made by the trial court for sentencing purposes unless they are clearly erroneous. 18 U.S.C. § 3742(e). Furthermore, the government need only prove those facts relied upon by the district court by a preponderance of the evidence. United States v. Chambers, 944 F.2d 1253, 1271 (6th Cir.1991), cert. denied, 60 U.S.L.W. 3580 (1992).
 
 
 19
 The thrust of Warren's argument concerns the extent of the criminal enterprise. At his sentencing hearing, the court made the following findings:
 
 
 20
 [T]his case clearly involved five or more people and the defendant was intricately involved in the transactions having been the primary link between Atkins and Gaither. While the evidence revealed the defendant Warren was not a leader he clearly held an elevated position consistent with that of a manager or supervisor. Pursuant to § 3B1.1(b) of the Sentencing Guidelines the offense is increased by three levels.
 
 
 21
 There is sufficient evidence in the record to support the district court's conclusion that Warren played the role of a supervisor or manager. Not only did he initiate the contact that led to the purchase and transportation of two kilograms of cocaine from Los Angeles, he remained actively involved as demonstrated by his meeting Atkins at the airport.
 
 
 22
 However, to support an enhancement of three levels, the government must also show that the criminal activity either included five participants or was "otherwise extensive." A participant is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n. 1). Obviously, the three defendants qualify as participants. At Gaither's sentencing hearing, the district judge also included the Los Angeles supplier of the cocaine as a participant, as well as a Detroit supplier with whom, according to the testimony of Patton, Gaither had contact.
 
 
 23
 Based upon the record before us, we are reluctant to assume that these two suppliers were the individuals whom the district judge had in mind when he found that Warren was involved in a criminal enterprise of five participants, particularly in light of the fact that there is no testimony to indicate that Warren had contact with the Detroit supplier. During oral argument, the government recognized this potential difficulty and seemed to suggest that a two-level enhancement pursuant to section 3B1.1(c) might be appropriate.[2]
 
 
 24
 In order that this uncertainty concerning the identity of the individuals involved in the criminal activity might be resolved, Warren's sentence should be vacated and the matter remanded to the district court.
 
 V.
 
 25
 For the foregoing reasons, the conviction of appellant Gaither is vacated and the cause is remanded for a new trial. The conviction of appellant Warren is affirmed but his sentence is vacated and the cause is remanded to permit further fact-finding consistent with this opinion.
 
 
 
 1 U.S.S.G. § 3B1.1(b) reads as follows:
 "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 2 U.S.S.G. § 3B1.1(c) reads as follows:
 "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by two levels."