[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15556
Non-Argument Calendar

_____

D.C. Docket No. 5:08-cv-00504-WTH-PRL

ANDRE VERLASQUE NEWMONES,

Plaintiff-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
and ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 17, 2013)

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Appellant-Petitioner Andre Newmones ("Newmones"), proceeding *pro se*, appeals the denial of his 28 U.S.C. § 2254 habeas corpus petition, arguing that there was insufficient evidence to support the state trial court's decision that he had violated his probation by committing second-degree murder, a finding that was made immediately after a jury had acquitted Newmones of the substantive count of second-degree murder. While on drug-offender probation for two offenses, Newmones was arrested and charged with the second-degree murder of Leroy Browning ("Browning"). At trial, the state presented no physical evidence connecting Newmones to the murder, and, instead, relied nearly exclusively on the testimony of Arthur Jones ("Jones"), Browning's roommate, to place Newmones at the scene of the murder. No other eyewitnesses connected Newmones to the murder.

## I.

Newmones's main argument is that the district court "unreasonabl[y] applied the standard for reviewing due process challenges based on the sufficiency of the evidence, as set forth in [*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)], in determining that a trier of fact could have found Mr. Newmones guilty by a preponderance of the evidence." [Appellant Br. at 1.] Among other things, Newmones contends Jones was not a credible witness and the district court

erred in relying upon his testimony.  After reviewing the record and reading the parties' briefs, we affirm the district court's denial of § 2254 relief.

At trial, Jones testified on direct examination that he was sitting on his porch in his wheelchair when Newmones approached and asked where Browning was. Jones testified that he had told Newmones that Browning was in bed, and that he had overheard Newmones and Browning arguing before he heard two gunshots. However, Jones's testimony on cross-examination was inconsistent either with his own testimony or other witnesses' statements as to, *inter alia*, (1) where he was physically located when Newmones allegedly approached the house; (2) both the number of gunshots that he heard and the number of gunshots that were actually fired; (3) the specific comments that he overheard during the incident; (4) whether he went into the bedroom, where Browning's body was found, after he heard the gunshots and whether it was possible to see Browning's body without approaching the bedroom; (5) whether he had consumed alcohol on the date in question; (6) what time of day the shooting occurred; (7) his physical location when the police arrived; (8) what kind of firearm was involved; and (9) his ability to walk, as he was wheelchair-bound.

Jones refused to answer various questions, which required the state trial court to intervene in the questioning.  Jones was hostile to Newmones's attorney,

3

telling him that he needed to go back to school, that Jones was not going to continue answering questions, and that Newmones's attorney needed to stop questioning him. Other witnesses consistently indicated that Jones was inebriated at the time of the incident and in the interviews with law enforcement that followed. The trial transcript reflects that Jones apparently soiled himself while on the stand. There was also evidence suggesting that Jones himself committed the murder, as he had owned a gun of the caliber used in the murder, the murder happened at his home, and he had traces of gunshot residue on his hands.

The jury acquitted Newmones of second-degree murder. Nevertheless, the state trial judge conducted a probation-revocation hearing[1] immediately after the jury verdict was announced and concluded that Newmones had violated his probation, stating "The violation is he murdered someone, in my opinion." [Jury Trial Transcript, Vol. III at 390.] When asked if the trial court was giving credibility to the witnesses' testimony without physical evidence, the court declined to point out the specific evidence on which it had relied. The court sentenced Newmones to consecutive maximums on the probation violations, totaling 20 years' imprisonment.

---

[1] Prior to *voir dire* on the substantive count of second-degree murder, the State noted that Newmones had a violation-of-probation case and asked the court to conduct a silent violation of probation hearing during the trial. Newmones agreed to permit the court to do so.

4

II.

In his § 2254 petition, Newmones argued (1) the evidence was insufficient to support the state trial court's conclusion that his guilt had been proven by a preponderance of the evidence; the state trial court erred by failing to (2) give Newmones an opportunity to be heard; (3) allow his counsel to be present at the probation violation hearing; (4) be a neutral party; (5) enter a written order reciting the specific violations found; and (6) give him a full revocation hearing.  The district court denied Newmones's § 2254 petition, but issued a certificate of appealability ("COA") on the issue of whether the state trial court's conclusion that Newmones had violated his probation was supported by insufficient evidence so as to render the decision unconstitutional under the Due Process Clause.  Liberally construing Newmones's *pro se* brief, Newmones argues on appeal that the district court erred by denying his § 2254 petition because there was insufficient evidence for the trial court to conclude that he had violated his probation.  Specifically, he argues that the district court unreasonably applied *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789, when it determined that a trier of fact could have found him guilty by a preponderance of the evidence.

5

III.

We review *de novo* a district court's decision to deny habeas relief. *Ferguson v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 1315, 1330 (11th Cir.), *cert. denied*, ___ U.S. ___, 82 USLW 3069 (2013).  We liberally construe *pro se* petitions.  *Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013).  We will not review issues that are outside the scope of the COA.  *Jordan v. Sec'y, Fla. Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007).

Under § 2254(d), a federal court may not grant habeas relief on claims that were previously adjudicated in state court, unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in state court.  28 U.S.C. § 2254(d)(1)–(2).  The phrase "clearly established Federal law" refers to holdings by the U.S. Supreme Court at the time of the state court's decision.  *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., concurring).  Clearly established federal law does not encompass statements made in *dicta*.  *Id.*

6

"The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). "A state court decision is 'contrary to' clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." *Id.* An "unreasonable application" of federal law occurs when the state court either (1) correctly identifies the legal rule from Supreme Court precedent but unreasonably applies the rule to the facts of the case, or (2) "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id.* The Supreme Court has repeatedly reiterated "that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Cullen v. Pinholster*, 563 U.S. ___, ___, 131 S. Ct. 1388, 1411 (2011) (internal quotation marks omitted). Unreasonableness is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the "contrary to" or "unreasonable application of" standard "is difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme

7

malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. ___, ___, 132 S. Ct. 38, 43 (2011) (internal quotation marks omitted). Indeed, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011) (*en banc*) (internal quotation marks omitted), *cert. denied*, 132 S. Ct. 2727 (2012).

## IV.

In *Jackson*, a federal habeas petitioner claimed he had been convicted of murder based upon insufficient evidence. 443 U.S. at 309, 99 S. Ct. at 2783–84. The Supreme Court concluded that, when reviewing the sufficiency of the evidence to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19, 99 S. Ct. at 2788–89. Here, the district court applied that standard to determine that a "rational trier of fact could have found [Newmones] guilty [of second-degree murder] by a preponderance of the evidence." [R. 18 at 13.]

The standard set forth in *Jackson*, however, primarily applies to cases involving direct criminal prosecutions. *See, e.g., Smith v. White*, 815 F.2d 1401,

8

1403, 1404 (11th Cir. 1987) (holding that a rational jury could have found the evidence sufficient to prove robbery and assault with intent to murder beyond a reasonable doubt).  Here, on the other hand, we are reviewing not a direct criminal prosecution but a probation revocation.  Indeed, the Supreme Court has indicated the standard applicable to probation-revocation cases is different from that in *Jackson*.  In *Douglas v. Buder*, 412 U.S. 430, 93 S. Ct. 2199 (1973), the Supreme Court addressed the constitutionality of the revocation of a petitioner's probation for his failure to immediately report a traffic citation where the terms of petitioner's probation required him to report all "arrests."  The Court determined the state court's decision that petitioner had violated his probation "was so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment."  *Id.* at 432, 93 S. Ct. at 2200.  The Supreme Court has since applied that standard in affirming the revocation of an incarcerated petitioner's good-time credits.  *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455–56, 105 S. Ct. 2768, 2774 (1985) (noting that the Court had previously recognized "a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence" (citing *Douglas*, 412 U.S. at 432, 93 S. Ct. at 2200)).

9

We conclude the standard set forth in *Jackson* is not applicable to this case. Instead, the appropriate standard is set forth in *Douglas*, i.e., whether "the finding that [Newmones] had violated the conditions of his probation . . . was so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment." 412 U.S. at 432, 93 S. Ct. at 2200. Although Newmones only challenges the district court's application of *Jackson*, this Court liberally construes *pro se* petitions, such that we construe his claim to refer to *Douglas* and address it on the merits. *See Dupree*, 715 F.3d at 1299.

We conclude there was sufficient evidence to find that Newmones had violated his probation by committing second-degree murder, such that the state trial court's decision was not contrary to, nor an unreasonable application of, *Douglas*'s totally-devoid of evidence standard. *See* 28 U.S.C. § 2254(d)(2). Further, the state court's determination of the facts was not unreasonable. *Id.* § 2254(d)(1). Although Jones's testimony was hostile toward Newmones's attorney, inconsistent both with his prior statements and other testimony that he provided at trial, and often unclear, it was not "so inherently incredible, so contrary to the teachings of human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt." *Wilcox v. Ford*, 813 F.2d 1140, 1146 (11th Cir. 1987) (internal quotation

10

marks omitted). Jones consistently stated that Newmones had approached his home, asked where Browning was, and confronted Browning about money, immediately before Jones heard gunshots. Further, numerous witnesses testified that Jones had identified Newmones as the shooter consistently since the date of Browning's death. Because Jones consistently testified as to these facts, his testimony was consistent enough for us to conclude it was not incredible as a matter of law.

Giving credence to Jones's testimony, we conclude there was evidence to support the state court's finding by a preponderance of the evidence that Newmones had violated his probation by committing second-degree murder. Jones's testimony connected Newmones to Browning's death. Although Jones's testimony was the only evidence linking Newmones to Browning's death, Jones's testimony was not contradicted, and he never wavered in his statements that Newmones shot Browning.

We conclude that the district court did not err by denying Newmones's § 2254 petition. Jones's testimony was not incredible as a matter of law, and, as such, the state court's determination of the facts was not unreasonable. Moreover, under a totally devoid of evidence standard, the state court's decision that Newmones had violated his probation by committing second-degree murder was

11

not contrary to, nor an unreasonable application of, clearly established federal law.

We decline to address Newmones's other arguments about the procedural

requirements of the revocation hearing, because those issues are outside the scope

of the COA.

V.

For the foregoing reasons, we affirm the judgment of the district court

denying habeas relief.

**AFFIRMED.**