[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 18, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-13371

_____

D. C. Docket No. 86-00685-CIV-ORL-19-DAB

KENNETH DARCELL QUINCE,

Petitioner-Appellant,

versus

JAMES CROSBY, Secretary,
Florida Department of Corrections,
CHARLIE CRIST, Attorney
General of the State of Florida,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 18, 2004)

Before TJOFLAT, ANDERSON and MARCUS, Circuit Judges.

ANDERSON, Circuit Judge:

## I. BACKGROUND

In the early 1980's, Kenneth Quince, a.k.a. Rasikh Abdul-Hakim ("appellant"), pled guilty to first-degree felony murder and burglary following the sexual battery and strangulation death of an 82-year old woman in her home, whereupon appellant was sentenced to death by the trial court. His conviction and sentence were affirmed on direct appeal. Quince v. State, 414 So.2d 185 (Fla. 1982). Subsequently, there was extensive collateral litigation in state court. See Quince v. State, 732 So.2d 1059 (Fla. 1999), Quince v. State, 592 So.2d 669 (Fla. 1992), Quince v. State, 477 So.2d 535 (Fla. 1985).[1]

As noted, see note 1, supra, appellant had filed a petition for habeas corpus relief before fully exhausting his state court remedies. After exhausting those remedies, appellant returned to federal court, amending his original petition and presenting the newly exhausted claims. In an opinion entered on May 10, 2002, the district court entered final judgment, having rejected all of appellant's numerous claims.

A Certificate of Appealability has been issued with respect to three claims:

---

[1]In the interim, appellant had sought relief in federal district court. However, those proceedings were administratively closed on October 26, 1990, pending further exhaustion of his state remedies. Quince v. Dugger, No. 86-685-CIV-ORL (M.D. Fla. Oct. 26, 1990).

(1) whether or not the failure of Judge Johnson to recuse himself deprived Quince of any constitutional right, or otherwise is relevant to this appeal; (2) whether or not Quince was denied effective assistance of counsel because his trial counsel's status as special deputy sheriff created a conflict of interest; and (3) whether there was a violation of Hitchcock v. Dugger, 481 U.S. 393, 107 S. Ct. 1821 (1987), because the sentencing judge did not consider nonstatutory mitigating circumstances. Quince v. Moore, No. 02-13371 (11th Cir. Aug. 23, 2002); Quince v. Moore, No. 02-13371 (11th Cir. Jan. 24, 2003). The facts relevant to each claim will be developed in the discussion thereof.

## II. DISCUSSION[2]

### A.    Recusal Of Judge From Collateral Proceedings

The first issue appellant raises is whether the failure of Judge Johnson, the presiding judge at appellant's hearing on his Rule 3.850 hearing, to recuse himself deprived appellant of any constitutional right relevant to this appeal. Judge Johnson was a former colleague of Howard Pearl in the public defender's office. At the time Pearl was representing appellant, Judge Johnson was serving as

---

[2] This case has been litigated on the assumption by all of the parties and the district court that the pre-AEDPA law applies. For this reason, and also because the case can be readily resolved in the State's favor under pre-AEDPA law, we decline to address whether pre-AEDPA law or the AEDPA should have applied.

3

appellate coordinator for the public defender's office. Judge Johnson indicated that he may have had some administrative role with processing appellant's appeal – i.e. Judge Johnson indicated that as appellate coordinator for the office, he had responsibility for checking the timing of appellate filings. Specifically, appellant argues that Judge Johnson's failure to recuse himself constituted a due process violation entitling appellant to habeas relief. We reject this argument.

The first basis for rejecting appellant's argument is that the claim is not cognizable. Judge Johnson acted merely as the state judge in a collateral proceeding, the proceeding on appellant's Rule 3.850 motion. In Spradley v. Dugger, we held that where a petitioner's claim goes to issues unrelated to the cause of petitioner's detention, that claim does not state a basis for habeas relief. 825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims as to errors at a hearing on the petitioner's 3.850 motion); see also Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings").

Therefore, while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief. See Spradley, 825 F.2d at 1568. The district court was correct in relying on Spradley and declining to grant habeas relief based on Judge Johnson's refusal to recuse himself from the Rule 3.850 hearing. We affirm the district court as to appellant's first argument.

We note that petitioner might have argued that there was a deficiency which rendered the state court proceedings not full and fair. Such a deficiency might deprive the state of the presumption of correctness with respect to the findings of Judge Johnson.[3] Thompson v. Keohane, 516 U.S. 99, 108-09, 116 S. Ct. 457, 463-64 (1995); Hardwick v. Crosby, 320 F.3d 1127, 1158 (11th Cir. 2003). However, appellant's brief makes no such argument. Moreover, there is no merit to the claim here.

As discussed above, Judge Johnson was a former colleague of appellant's trial counsel, Howard Pearl, at the public defender's office, and may have had a non-substantive, administrative role in processing appellant's appeal. The district

---

[3] We note this argument is distinguishable from directly seeking habeas relief based on Judge Johnson's failure to recuse himself; it only affects the presumption to which findings of fact are entitled on habeas review, thus only indirectly affecting this Court's analysis of appellant's other habeas claims.

court found that Judge Johnson was the appellate coordinator for the office, whose responsibilities included checking the timeliness of appellate filings. The district court also found there was no evidence that Judge Johnson had personal involvement or knowledge of appellant's case, defense, or appeal. Also, the Florida Supreme Court's opinion in Quince v. State, 732 So.2d 1059, 1062 (Fla. 1999), indicates that the facts alleged by appellant do not support a claim of bias that would require recusal by Judge Johnson.

We do not believe such a technical involvement, at most facilitating the proper filing of appellant's appeal, would be sufficient to undermine the presumption of correctness. We believe that the decision in Brownlee v. Haley, 306 F.3d 1043, 1063-64 (11th Cir. 2002), supports our conclusion in this regard. In Brownlee, we addressed the petitioner's claim of a Sixth Amendment violation where the petitioner's defense attorney had previously worked for the prosecutor's office that had prosecuted the petitioner for a different, earlier crime. We held as a matter of law "that no conflict of interest existed." Id. at 1063-64. In Brownlee, we were influenced by the fact that the defense attorney only served as a deputy district attorney with supervisory responsibility for the attorneys handling prosecutions, that the defense attorney was positive he had no contact with the petitioner during the earlier case, and that the actual prosecuting attorney in the

earlier case averred that the then deputy district attorney had no involvement in the case. Id. at 1063. Neither the attorney in Brownlee, nor Judge Johnson in the present case, had any involvement in the actual trials or other substantive handling involved in the respective cases. Despite the distinction that may be drawn between a judge and an attorney in regards to a conflict of interest, we think that Brownlee, by way of analogy, provides support for our conclusion that, because Judge Johnson had no involvement in appellant's case other than in an indirect supervisory and technical role in the handling of appellate filings in the public defender's office, appellant would not be able to show a deficiency in the collateral proceedings that would render the proceedings not full and fair. Id. at 1063-64. See also Spreitzer v. Peters, 114 F.3d 1435, 1451 (7th Cir. 1997) ("As for Anfinson, we defer to the Illinois Supreme Court's reasoning that she would not be disqualified from representing Spreitzer merely because another member of her office had at one time been a state's attorney on the other side."); Huff v. Standard Life Ins. Co., 683 F.2d 1363, 1369 (11th Cir. 1982) (noting that the fact that the judge was a former law partner of the firm representing one of the parties in the action did not create a risk of impartiality that would jeopardize the image of the judicial system).

In conclusion, even if appellant had put forward such an argument, we

7

would conclude on these facts that the collateral proceedings in this case were not rendered unfair. Therefore the presumption of correctness of Judge Johnson's findings is not undermined. We affirm the district court's ruling that appellant's claim concerning Judge Johnson is not cognizable on federal habeas review and note that Judge Johnson's findings in the state collateral proceeding are entitled to a presumption of correctness. See Hardwick, 320 F.3d at 1158.

B.     Ineffective Assistance Claim

Appellant was also granted a certificate of appealability on the issue of whether appellant received ineffective assistance of counsel because his trial counsel's status as a special deputy sheriff allegedly created a conflict of interest. At the time of appellant's conviction and sentencing, appellant's trial counsel, an attorney from the public defender's office, maintained the status of special deputy sheriff from the Marion County Sheriff's Department, a county adjacent to the county in which appellant was tried. Appellant argues that this status created a conflict of interest that entitles appellant to relief. The State argues that trial counsel's status as special deputy sheriff was merely an honorary title, was only maintained for the purposes of carrying a concealed weapon, resulted in no law enforcement duties for trial counsel, and did not otherwise create a conflict of interest or adversely affect appellant's representation.

The parties contest whether the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 1052 (1984), or that in Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708 (1980), should apply in the present case.[4] However, we need not resolve this issue in the instant case because the case is readily decided in the State's favor under either standard.

### 1.    The Cuyler standard

Under Cuyler, a petitioner in habeas proceedings who did not raise an objection at trial must show that his trial attorney labored under "an actual conflict of interest adversely affect[ing] his lawyer's performance." 446 U.S. at 350, 100 S. Ct. at 1719. Only when "a defendant shows that his counsel actively represented conflicting interests" does he establish an actual conflict under the Sixth Amendment. Id.

A mere hypothetical conflict will not suffice to establish a violation under

---

[4] In arguing that Strickland, and not Cuyler, should apply, the State relies upon Beets v. Scott, 65 F.3d 1258 (5th Cir. 1995) (en banc), and dicta in Mickens v. Taylor, 535 U.S. 162, 122 S. Ct. 1237 (2002). In Beets, the Fifth Circuit noted that many courts of appeal have applied Cuyler "unblinkingly" to "all kinds of alleged attorney ethical conflicts." 65 F.3d at 1266. The Fifth Circuit held that Strickland, and not Cuyler, applied to claimed conflicts between an attorney's personal interests and his client's interests. Id. at 1271-72. The Supreme Court in Mickens noted the Beets decision, stated that Cuyler itself involved only multiple concurrent representation – i.e., the active representation of conflicting interests – and suggested that the high probability of prejudice arising from multiple concurrent representation and the difficulty of proving prejudice warranted the Cuyler exception to the ordinary Strickland rule regarding prejudice. The Supreme Court expressly left open the issue of whether or not the Cuyler standard should be applied in cases involving successive representation or other conflicts of interest.

Cuyler.  See Smith v. White, 815 F.2d 1401, 1404 (11th Cir. 1987).  In Freund v.

Butterworth, we explained:

> An "actual conflict" of interest occurs when a lawyer has
> "inconsistent interests."  Smith, 815 F.2d at 1405.  In
> order to prove that an "actual conflict" hindered
> petitioner's lawyer's performance, petitioner "must make
> a factual showing of inconsistent interests" or point to
> "specific instances in the record" to suggest an actual
> impairment of his or her interests.  Smith, 815 F.2d at
> 1404; Oliver v. Wainwright, 782 F.2d 1521, 1524-25
> (11th Cir.) (emphasis and internal quotation marks
> omitted), cert. denied, 479 U.S. 914, 107 S. Ct. 313, 93
> L. Ed. 2d 287 (1986).

Freund, 165 F.3d 839, 859 (11th Cir.), cert. denied, 528 U.S. 817, 120 S. Ct. 57

(1999).

As noted above, Judge Johnson's findings of fact are entitled to a

presumption of correctness in this case.  The state trial court made the following

relevant findings of fact following its November 8, 1996 hearing:

> Mr. Pearl never was and never has been a law
> enforcement officer with the Marion County Sheriff's
> Department.  Mr. Pearl was in essence granted a
> concealed weapons permit from the Marion County's
> Sheriff's Department as many other individuals were at
> that time.  Counter to the defense counsel's assertions,
> the Court determines from the facts presented that Mr.
> Pearl had no manifest or actual authority to act as a fully
> constituted Deputy sheriff for the Marion County
> Sheriff's Department because at no time did he indicate
> to anyone that he possessed anything other than a "gun

10

toter's permit" as a result of his special deputy status. After acknowledging these findings by the state trial court, the district court made the following findings:

> [T]he uncontroverted testimony was that Mr. Pearl obtained and maintained his special deputy status solely in order to be able to carry a firearm while traveling throughout the state. He had no law enforcement duties, no arrest powers, and no uniform; he received no law enforcement training, no compensation, and no internal memoranda from the Sheriff's Office. The title was merely honorary. Once state law changed to permit Mr. Pearl to obtain a state license to carry a concealed firearm, he resigned his special deputy position.

We believe that this situation does not rise to the level of an actual conflict as required by Cuyler.

Moreover, there is simply no causal relation between any of the actions by Pearl in representing appellant and the fact that Pearl held the status of a special deputy in Marion County for the purpose of carrying a gun. "To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." Reynolds v. Chapman, 253 F.3d 1337, 1343 (11th Cir. 2001) (citing Freund, 165 F.3d at 860).

11

Appellant argues in his brief that Pearl was afraid that he would lose his status as a special deputy if he zealously defended appellant. However, appellant cannot point to any specific instances of conduct to support this claim. See Freund, 165 F.3d at 859. Appellant claims that advising appellant to enter a guilty plea shows Pearl's status influenced his representation of appellant. However, we agree with the district court that Pearl's explanation – that he felt the evidence was overwhelming against appellant and that by avoiding a jury trial, the trial judge might have shown mercy and granted appellant a life sentence – was a reasonable one. Appellant has not shown the decision was influenced by Pearl's status as a special deputy sheriff. Appellant also claimed that Pearl did not depose a law enforcement witness or move to suppress the witness' testimony because of his status as a special deputy sheriff. As pointed out by the district court, contrary to appellant's contention, Pearl did in fact take the deposition of the law enforcement witness. Further, after deposing the witness, Pearl discussed appellant's confession with appellant, who acknowledged that his rights had been read to him, that he understood those rights, that he had not been abused or mistreated by police, that his statement had been voluntary, and that the statement was in appellant's handwriting and signed by appellant. Appellant has not shown that Pearl's decision not to file a motion to suppress was based on anything other

12

than Pearl's conclusion that, given the information provided to him by appellant and the deposition of the law enforcement witness, a motion to suppress would have been futile.

We agree with the district court that appellant has not shown that Pearl made a decision not to pursue another reasonable approach in the case based on any conflicting loyalties. See Reynolds, 253 F.3d at 1343. Therefore, under the Cuyler standard, appellant's claim fails.

2.      The Strickland standard

Under Strickland, appellant must satisfy a two part test: (1) appellant must show that counsel's performance was deficient, falling "below an objective standard of reasonableness"; and (2) appellant must show that counsel's deficient performance prejudiced appellant's defense, in that there is a reasonable probability that the outcome would have been different but for counsel's unprofessional errors. 466 U.S. at 687-88, 104 S. Ct. at 2064. In addressing appellant's claim we must remember that there is a strong presumption that counsel provided reasonable assistance, and that petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. Id. at 689, 104 S. Ct. at 2065. Courts must avoid using "'hindsight'" and must endeavor to "evaluate the reasonableness of counsel's

13

performance 'from counsel's perspective at the time.'" Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065), cert. denied, 531 U.S. 1204, 121 S. Ct. 1217 (2001). As discussed above, Pearl's advice that appellant enter a guilty plea and Pearl's decision not to make a motion to suppress the confession were both reasonable in light of the facts of the case. Appellant cannot satisfy the first prong of the Strickland analysis by showing trial counsel's performance was deficient. Moreover, for reasons already discussed, appellant cannot establish the prejudice prong of Strickland.

Because appellant's claim fails under both Cuyler and Strickland, we affirm the district court's denial of appellant's conflict of interest claim.

C.     Failure To Consider Nonstatutory Mitigation

Appellant's final claim is that the sentencing judge violated Hitchcock v. Dugger, 481 U.S. 393, 107 S. Ct. 1821 (1987), by failing to consider numerous nonstatutory mitigating factors. At sentencing, appellant waived the right to a jury recommended sentence. After hearing evidence at sentencing, the trial court found the existence of three aggravating circumstances under Fla. Stat. § 921.141(5), that the murder was committed in the course of a rape, that the murder was committed for pecuniary gain, and that the murder was especially heinous, atrocious, or cruel. The trial court also considered evidence in mitigation of

14

appellant's sentence.  The sentencing court found only one mitigating factor existed – an impairment with respect to the capacity of appellant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.  In finding this mitigating factor, however, the trial court noted that the evidence was conflicting, and that it was giving the defendant the benefit of the doubt.  The trial court stated "that it does not feel this factor should be accorded much weight.  It is not a strong and clear mitigating factor." State v. Quince, No. 80-48-CC (Fla. 7th Cir. Ct. Oct. 21, 1980) (Sentencing Order).  In coming to its decision regarding appellant's capacity the sentencing court indicated that it considered appellant's low intelligence, drug and alcohol use, and the appearance of appellant in court as it related to appellant's mental limitations.  In regard to the other two mitigating factors raised by defendant at sentencing the sentencing court found that neither appellant's age nor his criminal history would serve as mitigating factors.  The sentencing court then determined the aggravating factors outweighed the one mitigating factor and sentenced appellant to death.

"In capital cases, the 'sentencer' may not refuse to consider, or be precluded from considering, any relevant mitigating evidence." Baldwin v. Johnson, 152 F.3d 1304, 1321 (11th Cir. 1998) (citing Hitchcock, 481 U.S. at 394, 107 S. Ct. at 1822).  Appellant asserts that the sentencing court failed to consider appellant's

15

low IQ, learning disability, tenth grade education, poor memory, alcohol and drug use, appellant's confession, and the death of appellant's father and sister as nonstatutory mitigating factors.

The Florida Supreme Court, in its review of appellant's <u>Hitchcock</u> challenge, stated, "Nor does the record support appellant's claim that the trial judge limited his consideration to only statutory mitigating circumstances." <u>Quince v. State</u>, 414 So.2d 185, 188 (Fla. 1982). In a series of cases, this Circuit has indicated that such a statement is a finding of fact:

> Although whether a <u>Hitchcock</u> error occurred is a legal question, "it is almost entirely dependent upon the answer to a question of fact: did the sentencing judge consider any and all nonstatutory mitigating circumstance evidence that was presented to him?" <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1032 (11th Cir.1994), <u>cert. denied</u>, 513 U.S. 1115, 115 S. Ct. 911, 130 L. Ed. 2d 793, (1995). The district court's finding, therefore, with regard to this factual question – i.e., what the sentencing judge knew or did – is subject to reversal only if clearly erroneous. <u>See</u> <u>Spaziano</u>, 36 F.3d at 1032 (reviewing the district court's findings – based on the state record, documentary evidence, or inferences from other facts – that the sentencing judge knew he was bound to consider, and did consider, nonstatutory mitigating evidence for clear error).

<u>Baldwin</u>, 152 F.3d at 1322. Of course, when reviewing a state court's finding of fact in a habeas case under pre-AEDPA law, we do not review for clear error; rather, we presume the correctness of the state court finding unless, <u>inter</u> <u>alia</u>, it is

16

not fairly supported by the record. 28 U.S.C. § 2254(d)(8) (1994) (amended 1996). Thus, the Florida Supreme Court's statement that the sentencing judge did not limit his consideration to only statutory mitigating circumstances, see Quince, 414 So.2d at 188, is a finding of fact, and it should be upheld, because, as discussed below, our review reveals that the finding is fairly supported by the record.

The record reveals that most, and certainly the most significant, of the nonstatutory mitigating factors asserted by appellant were expressly mentioned by the sentencing court when the court found the statutory mitigating factor of substantial impairment. Appellant asserts that the sentencing judge discounted the significance of this evidence because the sentencing court thought it had to rise to the level of a statutory mitigating factor. However, there is nothing in the record to support such an assertion. The sentencing order indicates that the sentencing court considered each instance of mitigation cited by defendant at the sentencing hearing, and reviewed the PSI in the case – which contains evidence of factors appellant now contends are mitigating, but which appellant did not specifically point out to the sentencing court at the time. In fact, the sentencing court announced from the bench that it had considered all of the evidence in the case. Our review reveals that the Florida Supreme Court's finding that the sentencing

17

judge did not limit himself to only statutory mitigating factors was fairly supported by the record. Therefore, as a factual determination, we are prohibited from overturning it.[5] We affirm the district court's denial of appellant's Hitchcock claim.

## III. CONCLUSION

We hold that appellant's claim based on a state court judge's failure to recuse himself in a collateral proceeding is not cognizable under habeas review. Appellant has not shown ineffective assistance of counsel based on his trial counsel's status as a special deputy sheriff under either the Cuyler or Strickland standard. Finally, appellant has not established a Hitchcock error occurred at the sentencing phase of his trial. We affirm the district court on all three of the grounds appealed by appellant.

AFFIRMED.

---

[5]Appellant appears to urge us to engage in de novo review of the matter. As discussed above, such review would be improper in the present case. Even if we did conduct such a review, we note that the record would also lead us to the same conclusion as the Florida Supreme Court. Our careful review of the sentencing transcript and the judge's order persuades us that the sentencing judge did not refuse to consider any evidence which suggested mitigation. In particular, it seems clear that the sentencing judge did consider evidence of any impairment in Appellant's capacity to appreciate the criminality of his conduct or conform his conduct to the law, whether or not the suggested impairment was substantial. Thus, the sentencing judge did not improperly limit his consideration of mitigating circumstances.