[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11624
Non-Argument Calendar
_____

D.C. Docket Nos. 2:15-cv-00030-LGW-RSB; 2:14-cr-00012-LGW-RSB-4

WESTLEY KAYEON KENNEDY,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(January 16, 2020)

Before WILSON, ROSENBAUM, and MARCUS, Circuit Judges.

PER CURIAM:

Westley Kayeon Kennedy, aka "K.K.", a counseled federal prisoner serving a 240-month sentence for conspiracy to possess with intent to distribute and intent to distribute methamphetamine and quantities of cocaine and oxycodone, appeals the denial of his pro se 28 U.S.C. § 2255 motion to vacate.  On appeal, Kennedy argues (1) that his Sixth Amendment right to conflict-free counsel was violated because his trial counsel, B. Reid Zeh III, also represented Tawan Carter, who had identified a "K.K." as a distributor of methamphetamine; (2) that the magistrate judge erred by relying on materials outside the files and records of the case to recommend denying his § 2255 motion without first holding an evidentiary hearing; and (3) that the government and his attorney violated his right to due process by failing to observe adversarial norms.[1]  We address each argument in turn.

## I.

In a § 2255 proceeding, we review legal issues *de novo* and factual findings for clear error.  *Thomas v. United States*, 572 F.3d 1300, 1303 (11th Cir. 2009).  Claims involving a counsel's conflict of interest present mixed questions of law and fact that are reviewed *de novo*.  *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001).  However, where, as here, a party fails to object to a magistrate judge's report and recommendation, the party waives the right to challenge on appeal the

---

[1] The district court granted a certificate of appealability on the same issues.

district court's order, though we may review an appeal for plain error, if necessary, in the interests of justice.  11th Cir. R. 3-1.

"Under plain error review, a party must show (1) an error occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) failure to correct the error would seriously affect the fairness of the judicial proceeding."  *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 975 (11th Cir. 2016) (quotation marks omitted).  We may affirm the district court's judgment on any basis supported by the record.  *Fla. Wildlife Fed'n Inc. v. United States Army Corps of Engineers*, 859 F.3d 1306, 1316 (11th Cir. 2017).

Generally, to demonstrate that a counsel's performance was so defective that it was constitutionally deficient and requires reversal, a defendant must allege facts showing that (1) his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The right to effective assistance of counsel "includes the right to counsel who is unimpaired by conflicting loyalties."  *Duncan v. Alabama*, 881 F.2d 1013, 1016 (11th Cir. 1989).

To demonstrate ineffective assistance of counsel based on a conflict of interest, a § 2255 petitioner must show that counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance.  *Pegg v. United*

3

*States*, 253 F.3d 1274, 1277 (11th Cir. 2001). "Only when a defendant shows that his counsel actively represented conflicting interests does he establish an actual conflict under the Sixth Amendment." *Quince v. Crosby*, 360 F.3d 1259, 1264 (11th Cir. 2004). That fact-specific inquiry requires the defendant to make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his interests. *Id.* A mere speculative, hypothetical, or possible conflict of interest is insufficient to establish an ineffective-assistance claim. *Id.* To prove adverse effect, the "petitioner must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." *Pegg*, 253 F.3d at 1278. In the guilty-plea context, we look to whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty. *Id.*

We find that the district court did not err, plainly or otherwise, in concluding that Kennedy's Sixth Amendment right to conflict-free counsel was not violated. As an initial matter, Kennedy has failed to show an actual conflict of interest. Instead, Kennedy has alleged, at most, that Zeh knew or should have known that Kennedy was the "K.K." that Carter was informing upon. After all, the underlying criminal indictment referred to Kennedy as "K.K.," Kennedy's presentence

4

investigation report (the "PSI") listed Carter's case as related and included Carter's incriminating statements against Kennedy—which would not have been relevant unless Kennedy and "K.K." were one and the same, and Kennedy conceded during his change of plea hearing that he is sometimes known as "K.K."

It is also undisputed that on May 30, 2013, Carter told DEA agents that he delivered methamphetamine to "K.K." during the preceding months, that Carter pled guilty to conduct unrelated to Kennedy's, on November 18, 2013 (*United States v. Cruz*, No. 2:13-cr-34 (S.D. Ga. Aug. 7, 2013)), and that Carter was sentenced on June 25, 2014. So it cannot be disputed that Zeh simultaneously represented both Carter and Kennedy for three months between April 11, 2014, when Zeh was appointed counsel for Kennedy, and June 25, 2014, when Carter was sentenced.

While all of that indicates the *potential* for a conflict of interest, that alone is insufficient. First, it is not "per se violative of constitutional guarantees of effective assistance of counsel" for Zeh to have simultaneously represented Carter and Kennedy. *See Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). Second, it is not enough for Kennedy to theorize that, for example, Zeh *might* have sacrificed Kennedy's plea-negotiation position to somehow benefit Carter. Rather, Kennedy was required to make specific factual allegations that suggested inconsistent interests or impairment of representation based on the alleged conflict. Kennedy's bald assertions that Zeh's routine litigation decisions were tainted by his representation

5

of Carter do not meet that standard.[2] *See McConico v. State of Ala.*, 919 F.2d 1543, 1546 (11th Cir. 1990) ("Appellant must . . . demonstrate that the attorney made a choice between possible alternative courses of action . . . helpful to one client but harmful to the other.").

Nor does anything in the record shows that the asserted conflict of interest adversely affected Zeh's representation of Kennedy or Kennedy's decision to plead guilty. In fact, the record supports the opposite conclusion: that Kennedy benefitted by pleading guilty instead of going to trial. Putting aside Carter's testimony, the government's evidence against Kennedy was overwhelming—multiple witnesses identified Kennedy as a distributor of controlled substances and the government intercepted dozens of telephone calls and text messages involving Kennedy wherein illegal drug activities were discussed. Further, Kennedy's guilty plea allowed him to have a lower sentencing exposure—limiting the advisory guideline range to the 240-month statutory maximum from a maximum of 120 years' imprisonment if convicted on each count—spared him a possible sentencing enhancement, pursuant to 21 U.S.C. § 851, and allowed him to pursue an acceptance-of-responsibility reduction without the government's objection. Finally, Kennedy admitted that he was not coerced to plead guilty and was in fact guilty, and he has not recanted those

---

[2] The government submitted Zeh's affidavit in support of its opposition to Kennedy's § 2255 motion. Because Kennedy's allegations do not rise above the theoretical conclusory, we need not rely on the contents of Zeh's affidavit to affirm.

admissions.  In short, while proceeding to trial may have been a *plausible* alternative strategy, it certainly would have exposed Kennedy to significant risks he avoided by pleading guilty.

Nor has Zeh pointed to anything in the record that establishes (or even suggests) a "link" between Zeh's purported external loyalties and Kennedy's decision to plead guilty—a decision that Kennedy testified was uncoerced.

Kennedy has therefore failed to demonstrate that the district court plainly erred in finding that there was no violation of Kennedy's Sixth Amendment right to conflict-free counsel.[3]  Accordingly, we affirm the district court's judgment.

## II.

We ordinarily review the denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion.  S*ee Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014).  However, here, because Kennedy failed to object to the magistrate judge's report and recommendation, we review for plain error. 11th Cir. R. 3-1.  To be entitled to a § 2255 hearing, the movant must at least allege credible non-conclusory facts that, if true, would support his claim for relief. *Winthrop-Redin*, 767 F.3d at 1216.  A hearing is not required on frivolous claims or

---

[3] Though an attorney's failure to inform the court or his client about a potential conflict does not amount to a *per se* violation of the Sixth Amendment, *United States v. Novaton*, 271 F.3d 968, 1012 n.12 (11th Cir. 2001), we take this opportunity to emphasize yet again that in circumstances similar to those presented here, counsel should inform his clients and the presiding courts of the circumstances surrounding the potential conflict of interest.  *See id.*

generalizations wholly unsupported or contradicted by the record. *Id.* Because Kennedy has made no non-frivolous claims and has instead relied entirely on generalizations that are unsupported or contradicted by the record, the district court did not plainly err by not holding an evidentiary hearing before recommending the denial of Kennedy's § 2255 motion.[4]

## III.

Finally, we turn to Kennedy's argument, raised for the first time on appeal, that his attorney and the government violated his right to due process by failing to observe adversarial norms.[5] We review questions of constitutional law *de novo*. *United States v. Whatley*, 719 F.3d 1206, 1213 (11th Cir. 2013). We do not ordinarily consider issues that were not before the district court. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). And though we may exercise discretion to do so in limited circumstances, *see id.* at 1332 (enumerating exceptions), Kennedy has not argued any such circumstances are present here. So we could affirm on that basis alone. Nevertheless, we briefly review the merits of Kennedy's claim.

---

[4] Though, on direct appeal, we stated that "the record [was] not sufficiently developed to allow meaningful review of Kennedy's conflict of interest argument," we did not require the district court to hold an evidentiary hearing before disposing of Kennedy's ineffective-assistance claim. *See United States v. Kennedy*, 674 F. App'x 977 (2017).

[5] Kennedy's amended § 2255 motion did contend that Zeh failed to dedicate sufficient resources to put on an adversarial challenge to the government's proof. But Kennedy does not pursue that contention on appeal.

As a preliminary matter, Kennedy's due-process claim must fail because it is a repackaged Sixth Amendment claim. "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment . . . must be the guide for analyzing [such] claim[s]," rather than the more generalized notion of due process. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quotation marks omitted) (discussing substantive due process); *United States v. Hano*, 922 F.3d 1272, 1288 (11th Cir. 2019), cert. denied, No. 19-6053, 2019 WL 5686692 (U.S. Nov. 4, 2019) (extending to procedural due process). The gravamen of Kennedy's argument is that he was deprived of effective assistance because Zeh was working for the government, rather than Kennedy, or otherwise failed to rigorously defend Kennedy from the pending criminal charges. So it is the Sixth Amendment, and not the Due Process Clause, that we look to here.

True, a counsel's complete failure to subject the prosecution's case to meaningful adversarial testing can rise to the level of a Sixth Amendment violation. *See United States v. Cronic*, 466 U.S. 648, 659 (1984). But nothing in the record suggests that's the case here. Zeh represented Kennedy throughout the criminal proceedings and filed a bevy of motions, and Kennedy admitted that he was neither coerced to plead guilty nor unsatisfied with his representation. Zeh objected on numerous grounds to Kennedy's PSI, and the probation officer incorporated some of those objections in an amended PSI and excluded those contested issues from the

9

advisory guideline calculation.[6]    Moreover, Zeh maintained two objections at Kennedy's sentencing hearing, one of which resulted in the district court's granting Kennedy an acceptance of responsibility reduction.  With no countervailing specific factual allegations, we cannot say that Zeh's performance so undermined the proper functioning of the adversarial process that the process cannot be relied on as having produced a just result.  *See Strickland*, 466 U.S. at 686; *Cronic*, 466 U.S. at 659.

We have also considered Kennedy's other contentions related to this issue and conclude that they lack merit.

## IV.

For the foregoing reasons, the district court did not err, plainly or otherwise, in denying Kennedy's § 2255 motion.

**AFFIRMED.**

---

[6] Zeh also initially objected to certain of the intercepted telephone conversations involving Kennedy wherein illegal drug activities were discussed.  However, after having the opportunity to listen to those calls, Zeh and Kennedy withdrew those objections.  In fact, the court subsequently awarded Kennedy the acceptance of responsibility based on his forthright withdrawal of these objections.

10